# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| ANNIE LASETER CORMIER | * | CIVIL ACTION NO. 05-1259 |
|---|---|---|
| VERSUS | * | JUDGE MELANÇON |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Annie Laseter Cormier, born August 3, 1979, filed an application for supplemental security income payments on June 20, 2003, alleging disability as of April 13, 2003, due to extreme lower back pain.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Lafayette General Medical Center ("LGMC") dated April 13-17, 2003**. Claimant was involved in an automobile accident in which she sustained multiple injuries, including a hemopneumothorax and T12 burst fracture with impingement on the spinal cord. (Tr. 98). She underwent tube thoracostomy, and an instrument fusion between T11, T12, and L1 to stabilize the fracture. (Tr. 102, 140).

**(2) Report from Dr. Cason DelaHoussaye dated July 18, 2003**. Dr. DelaHoussaye reported that he had seen claimant because of an abnormal pap smear. (Tr. 138). She also had blunt trauma to her back. He stated that he had last seen her on June 23, 2003, at which time his examination revealed no physical disability whatsoever. He noted that she could possibly have heavy lifting restrictions, but had none as to sitting, standing, walking, lifting, carrying and handling objects, and hearing and speaking.

**(3) Consultative Examination by Dr. Raymond F. Taylor dated August 14, 2003**. Claimant appeared to be recovering from her automobile accident injuries, but complained of early fatigue and stiffness in her back. (Tr. 140). She was taking Flexeril for the stiffness.

On examination, claimant was 69 inches tall and weighed 127 pounds. (Tr. 141). Lungs were clear, and breath sounds were normal.

On musculoskeletal examination, claimant had some limited range of motion of the back and tenderness over the T12 vertebra. She had no paracervical or paravertebral spasm or tenderness. Straight leg raising was negative.

Range of motion of the extremities was normal. Claimant had no loss of muscle strength or atrophy. Grip strength was good. Manual dexterity and grasping ability were normal.

Claimant had no swelling, instability, or deformity of any joints. Gait and station was normal. She could walk on her heels and toes without difficulty.

Neurologically, claimant was oriented to time, place, and person. Cranial nerves and motor and sensory nerve function were normal. She had no abnormal reflexes.

Psychologically, claimant's behavior was appropriate. Her thought content, affect, and mood were normal. Concentrating ability and memory were normal.

X-rays showed evidence of compression fracture of the T12 vertebra with instrumented fusion between T11, T12, and S1. (Tr. 143). Claimant appeared to have a solid posterior lateral fusion at that level. She also had some narrowing of the lumbosacral disc space.

Dr. Taylor's diagnosis was mid back stiffness secondary to first fracture of the T12 vertebra. He noted that claimant had sustained a rather serious injury that year, but there was no evidence at that time of any nerve root or spinal damage. He observed that she had recovered well from her injuries, and complained only of stiffness in her back and fatigue of her back muscles. He found that aside from some limitation of range of motion of the back, examination was essentially normal. Based on his findings, he opined that claimant should not do lifting or carrying of objects over 40 pounds, or perform work-related activities requiring frequent bending, stooping, crouching, or climbing. He concluded that claimant appeared to be doing very well following her injury and surgery, and that "it might be possible that these limitations be lifted given a little bit more time." (Tr. 144).

**(4) Residual Functional Capacity ("RFC") Assessment dated September 4, 2003**. The evaluator determined that claimant could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 146). She could stand/walk or sit about 6 hours in an 8-hour workday. She had unlimited push/pull ability. She could frequently climb ramps and stairs, balance, kneel, and crawl; occasionally stoop and crouch, and never climb ladders, ropes, and scaffolds. (Tr. 147).

**(5) Records from LSU Medical Center dated May 28, 2003 to July 27, 2004**. On May 28, 2003, claimant stated that she was doing well. (Tr. 160). She

4

complained of being depressed and crying easily. The assessment was that claimant was stable. X-rays of the thoracic spine dated June 1, 2003 showed satisfactory alignment. (Tr. 161).

On July 9, 2003, claimant was feeling better. (Tr. 157). X-rays of the thoracic spine showed good alignment. (Tr. 158).

On July 27, 2004, claimant was doing well. (Tr. 154). MR of the spinal canal showed an old compression fracture of T12 with an interval internal fixation since April, 2003 resulting in a much improved alignment. (Tr. 156). There was no evidence of compression on the spinal cord.

**(6) Neurological Consultative Examination by Dr. Obiefuna Okoye dated December 4, 2004**. Claimant complained of mid back pain radiating down her left leg and hip. (Tr. 162). She reported that she had last worked as a cashier, but could not continue because of pain on standing or sitting for long periods. She was able to dress and feed herself, stand for 20 minutes at a time and for 3 hours in an 8-hour period, walk on level ground for about half a mile, sit for 15 to 20 minutes, lift 10 pounds, drive for 15 to 20 minutes, and do some sweeping and shopping. She took over-the-counter pain relievers. (Tr. 163).

On examination, claimant was 71 inches tall and weighed 125 pounds. She ambulated without difficulty. She was able to get on and off the examination table,

get up and out of the chair, and dress and undress without any observed deficits.

On examination of the spine/extremities, claimant had palpable pulses. She had no edema, cyanosis, or clubbing. She had tenderness at the T12-L1 level. Her gait was normal. Her grip was 5/5 in both hands. (Tr. 164). Fine and gross manipulation skills were intact.

Claimant had decreased range of motion of the left hip. Straight leg raise was 80 on the right and 75 on the left supine, and 80 on the right and 70 on the left sitting. She was able to walk on her heels and toes, squat, and perform heel to toe. She had no ulcerations or varicosities.

Neurologically, claimant was alert and oriented. Her mood and affect were appropriate. Motor was 5/5 in all extremities.

Sensory function was intact. Cranial nerves were intact. Deep tendon reflexes were 2+.

Dr. Okoye's impression was back pain, status-post thoracic/lumbar vertebra fusion surgery. (Tr. 165). He noted that while there was decreased range of motion of the left hip, claimant did not require an assistive device for ambulation. He found that she could sit, stand, walk, lift, hear, speak, and handle objects without any observed deficits.

In the Medical Source Statement of Ability to Do Work-Related Activities (Physical), Dr. Okoye determined that claimant was able to lift/carry 10 pounds frequently. (Tr. 166). She could stand/walk at least 2 hours in an 8-hour workday. She could sit less than about 6 hours in an 8-hour workday. (Tr. 167). She was limited as to pushing and/or pulling in the upper and lower extremities.

Claimant could occasionally perform all postural activities. She was limited as to reaching in all directions, but was unlimited as to other manipulative functions. (Tr. 168). She could occasionally reach, and constantly handle, finger, and feel.

**(7) Claimant's Administrative Hearing Testimony**. At the hearing on October 13, 2004, claimant was 25 years old. (Tr. 173). She testified that she was 6 feet tall and weighed about 130 pounds. She was a high school graduate.

Claimant reported that she had worked as a cashier in a grocery store for less than a month. (Tr. 173-74). She had also worked at a gas station for about a month. (Tr. 174).

As to complaints, claimant testified that she had constant back pain after her car accident. (Tr. 175, 184). She stated that she also had pain going down into her left leg down to her toes with numbness. (Tr. 183-84). She reported having depression with weekly crying spells, but had not taken any medications for it. (Tr. 177, 185).

7

Regarding activities, claimant testified that she helped her daughter with homework. (Tr. 178). She also played games with her three-month-old son. She stated that she did not pick up her baby because it hurt too much. (Tr. 180). She said that she smoked about half a pack of cigarettes per day. (Tr. 183).

As to restrictions, claimant testified that she could lift about 7 or 8 pounds. (Tr. 181). She stated that she could walk less than half a block. (Tr. 182). She said that she could stand for about 15 minutes, then had to rest or sit for about 10 to 15 minutes. She reported that she did not have any problems with her hands. (Tr. 183).

**(8) The ALJ's Findings are Entitled to Deference**. Claimant argues that: (1) the ALJ erred applying the medical/vocational guidelines where the RFC study established non-exertional impairments limiting her ability to sit or stand for prolonged periods; (2) the ALJ erred in failing to address her disabling pain, and (3) the ALJ erred in failing to apply the listing at 1.04.

As to the first argument, claimant asserts that the ALJ erred in failing to use a vocational expert in this case because of her non-exertional limitations due to pain. (rec. doc. 15, pp. 2, 5). Specifically, she argues that because she was relegated to sedentary work activity but had to alternate sitting and standing, she had a non-exertional impairment which required vocational expert testimony.

However, the regulations provide that the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform when the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations, and that claimant either suffers only from exertional impairments *or her non-exertional impairments do not significantly affect her residual functional capacity*. (emphasis added). *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987); 20 C.F.R. § 404.1569 and Part 404, Subpart P, Appendix 2, Section 200.00. Here, there is no evidence, other than claimant's own testimony, that claimant was required to alternate sitting and standing. In the consultative neurological examination, Dr. Okoye observed no limitations as to ambulating, sitting and standing. (Tr. 163-65). Additionally, Dr. Taylor found that claimant had normal range of motion of the extremities, no loss of muscle strength or atrophy, normal gait and station, and normal heel and toe walk. (Tr. 142). Thus, the evidence does not show that her non-exertional impairments significantly affected her residual functional capacity such as to require vocational expert testimony.

Additionally, as found by the ALJ, claimant's characteristics correspond to the listing at § 201.27 of Appendix 2, which directs a finding of not disabled for a younger individual who has a high school education and has unskilled or no work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.27. (Tr. 18). Thus, the ALJ's

9

decision to rely on the grids is entitled to deference.

Next, claimant argues that the ALJ failed to address her disabling pain. (rec. doc. 15, pp. 2, 6-7). To prove disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing pain. *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995). Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity. *Id*. Disabling pain must be constant, unremitting, wholly unresponsive to therapeutic treatment, and corroborated in part by objective medical testimony. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).

In this case, the ALJ noted that claimant had made a very significant recovery from her injuries. (Tr. 16). He further observed that the two consultative examinations supported the finding that she could perform sedentary work and was not disabled. (Tr. 17). The record confirms that none of claimant's physicians had indicated that her impairments were disabling. (Tr. 138, 143-44, 165). *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (substantial evidence supported ALJ's finding that claimant could perform a wide range of sedentary work where no physician who examined her pronounced her disabled). Additionally, the most recent diagnostic tests showed that claimant's back fracture had healed satisfactorily, and

that there was no evidence of compression on the spinal cord. (Tr. 156). Thus, claimant has not established a medically determinable impairment that was capable of producing disabling pain. *Ripley, supra*.

Further, the most recent record indicates that claimant was taking only over-the-counter medications. (Tr. 163). This does not support claimant's allegation of disabling pain. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (ALJ could rely on claimant's failure to take medication for the relief of severe pain to discredit his complaints); *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (reliance on aspirin does not suggest a disabling condition); *Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong medication is inconsistent with subjective complaints of disability); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling condition). As the ALJ's finding regarding claimant's disability is supported by the medical records, it is entitled to deference.

Finally, claimant argues that the ALJ erred in failing to apply the listing at § 1.04(C) of the Social Security listings, which provides as follows:

> 1.04 *Disorders of the spine*: (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.

With:

*\*\*\**

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04.

While the records confirm that claimant had sustained a back injury, claimant has not shown that she met the criteria under § 1.04(C). None of the physicians found that she had chronic pain and weakness resulting in her inability to ambulate effectively. In fact, Dr. Taylor found that she had no loss of muscle strength or atrophy, normal gait and station, and normal heel and toe walk, which is contrary to the listing criteria. (Tr. 142). Additionally, Dr. Okoye determined that claimant ambulated without difficulty, had normal motor function, and was able to walk on her heels and toes, squat, and perform heel to toe with no difficulties. (Tr. 163-64).

For a claimant to show that her impairment matches a listing, it must meet *all* of the specified medical criteria. (emphasis in original). *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990). An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Id.* As claimant has not demonstrated that she met the criteria under § 1.04, the ALJ's finding that claimant's impairment did not meet the listing for spinal disorders is entitled to

12

deference.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED*

***SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 9th day of November, 2006, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE